## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cr-20079-JAR |
| | ) | |
| | ) | |
| RANDI SERNA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER DENYING MOTION FOR IMMEDIATE RELEASE

This matter comes before the court on defendant Randi Serna's motion for immediate release from custody at the CoreCivic Detention Center in Leavenworth, Kansas (ECF No. 77).  Defendant asks to be temporarily released pursuant to 18 U.S.C. § 3142(i) to minimize the risks posed by COVID-19.  Plaintiff United States of America filed its response opposing the motion (ECF No. 80).  The court has considered the briefing and, for the reasons discussed below, denies defendant's request for immediate release.

Background

On December 18, 2019, defendant was indicted, with five co-defendants, on a kidnapping charge, pursuant to 18 U.S.C. § 1201(a).[1]  Defendant was arrested on January 6, 2020, and the court held a detention hearing on January 8, 2020.[2]  The court found by a

---

[1] ECF No. 1.

[2] ECF No. 16.

preponderance of the evidence that "no condition or combination of conditions of release would reasonably assure the appearance of defendant as required, i.e., defendant poses a serious flight risk (not physical flight from the jurisdiction, but rather not being reasonably amenable to supervision)."[3]   It did not find defendant to be a danger to the community.[4]

The court ordered the defendant detained pending trial.[5]  Since that time, defendant has been detained at the Detention Facility operated by CoreCivic, in Leavenworth, Kansas.  On May 19, 2020, defendant filed the instant motion, seeking temporary release to the home of her friend and former boss, Robert Daniels, Jr., and his wife, Jasmine Daniels.  Rather than seek a *de novo* review before the District Court appealing the order of detention, defendant seeks to reopen the detention hearing pursuant to 18 U.S.C. §3142(i).

Analysis[6]

A detention hearing may be reopened if "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether

---

[3] ECF No. 17.

[4] *Id.*

[5] *Id.*

[6] Because of the time-sensitive nature of the relief requested and also in light of Administrative Order No. 2020-3, the court enters this order without holding a hearing on the motion. *See, e.g., United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (recognizing the Bail Reform Act is silent about whether the defendant is entitled to an in-court hearing after a detention order has issued and declining during the coronavirus pandemic to grant a hearing in an "endeavor to comply with the federal and state recommendations about avoiding bringing people together in groups larger than ten persons, as well as rule expeditiously").

there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."[7]  Defendant argues the court should reopen and reconsider the detention order because the COVID-19 pandemic is a change in circumstances that places defendant at significant health risks and makes her temporary release necessary.  18 U.S.C. § 3142(i) states in relevant part:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason*.[8]

The defendant bears the burden of proof under § 3142(i).[9]  Defendant will be entitled to temporary release only if she proves it is necessary for preparation of her defense or for another compelling reason.

Defendant argues that compelling reason is her increased risk of contracting COVID-19 because of weakened health due to drug use. There is limited authority regarding when temporary release is justified under this provision of the statute, although a defendant's medical condition may present the compelling reason in the appropriate

---

[7] 18 U.S.C. § 3142(f)(2)(B).  *See United States v. Dermen*, No. 20-4000, 2020 WL 1027785, at *3 (10th Cir. Mar. 3, 2020).

[8] 18 U.S.C. § 3142(i) (emphasis added).

[9] *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) (citing *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases)).

case.[10]   However, "[c]ourts have typically granted relief under § 3142(i) only 'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'"[11]   Magistrate Judge Angel D. Mitchell previously established a four-factor analysis to determine whether the defendant met his burden to show a "compelling reason" for temporary release pursuant to § 3142(i): (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.[12]   This court adopts Judge Mitchell's four-factor analysis here.

Original Grounds for Detention

Defendant was indicted, along with five co-defendants, and charged with one count of kidnapping under 18 U.S.C. § 1201(a)..[13]   The court found by a preponderance of evidence that no condition or combination of conditions of release would reasonably assure defendant's appearance as required, i.e. she poses a serious flight risk by not being

---

[10] *Clark*, 2020 WL 1446895, at *4 (citing *United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009) (defendant could seek temporary release under § 3142(i) for medical reasons)).

[11] *Clark*, at *4 (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (summarizing cases)).

[12] *See Clark*, 2020 WL 1446895.

[13] ECF No. 1.

reasonably amendable to supervision.[14]   The court made factual findings to support its decision to detain defendant, including her diagnosis of bipolar disorder, with three prior suicide attempts; her history of drug abuse; and her lack of stable employment and unverified living situation.   The detention order further noted defendant's prior history of failing to appear at court proceedings and failing to comply with conditions of release.[15] Defendant concedes she has previously hid from agents and has previously failed to appear in misdemeanor and traffic cases.[16]   Per the probation office's memorandum, five active warrants have been issued since the time defendant was detained on the instant offense. Defendant's consistently poor record of compliance with pretrial conditions of release is relevant to the court's ability to impose conditions that could protect her, supervising court personnel, and the public from the COVID-19 pandemic. This factor weighs against her request for temporary release.

Specificity of COVID-19 Concerns

Defendant identifies herself as a "long-term methamphetamine addict who is particularly vulnerable to diseases such as COVID-19."[17]   Defendant argues that COVID-19 has more serious effects on people with co-morbidities; she includes those dealing with

---

[14] ECF No. 17.

[15] *Id.*

[16] ECF No. 77 at 13.

[17] *Id.* at 9.

the effects of long-term drug use.[18]  This court has previously taken judicial notice of the spread and wide-ranging effects of the COVID-19 pandemic.[19]  As to the risks specific to users of methamphetamine, plaintiff cites to a report from the National Institute on Drug Abuse that states "people with opioid use disorder (OUD) and methamphetamine use disorder may also be vulnerable" to COVID-19, because of the effects of methamphetamine on the pulmonary and respiratory systems.[20]

But beyond asserting herself as a methamphetamine user, defendant has not presented medical records indicating she has any diagnosed pulmonary or respiratory issues, nor does she assert she has any symptoms.  Rather, defendant merely cites to the possibility that she might be at higher risk of COVID-19 because of her drug use.  This speculative argument lies in contrast to cases where temporary release has been granted.[21]

Defendant also argues that conditions at CoreCivic place her at risk for contracting COVID-19, citing the number of reported cases in Leavenworth County.  The court finds

---

[18] *Id.*

[19] *See United States v. Sportsman*, No. 19-20058-JAR, 2020 WL 1904031, at *1 (D. Kan. Apr. 17, 2020); *United States v. Brown,* No. 08-cr-20115, 2020 WL 1536544, at *2 (D. Kan. Mar. 31, 2020).

[20] ECF No. 77 at 8-9; ECF No. 77-3.

[21] Defendant cites the District of Kansas case *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *5 (D. Kan. Apr. 9, 2020), where temporary release was discussed in the context of a 18 U.S.C. § 3145(c) motion because the defendant had already been convicted and was awaiting sentencing.  There, the court found that the defendant had shown his obesity put him at an increased risk for severe illness.  The ultimate ruling came from an analysis of other factors favoring release, including the defendant's history of good behavior, history of complying with conditions of release, and the non-violent nature of his crime of conviction.

that current information indicates CoreCivic has undertaken significant steps to manage the risks of COVID-19 and has implemented significant protections and precautions.[22] Plaintiff represents the U.S. Marshals Service confirmed there were no positive cases of COVID-19 at the CoreCivic Leavenworth Facility as of June 1, 2020.[23]   Although defendant argues "[t]here can be no doubt that COVID-19 is within the walls of CoreCivic Leavenworth," she does not offer evidence of any known cases there. Defendant's alleged concerns regarding her heightened risks of COVID-19 are general, not specific, and speculative.[24]   This factor weighs against defendant's request for temporary release.

Proposed Release Plan

Defendant proposes she be temporarily released on in-home confinement with her friend and former boss, Robert Daniels, Jr., and his wife, Jasmine Daniels.  The updated release plan indicates defendant has known Mr. Daniels for 10 years and she has lived with him in the past.  Mr. and Mrs. Daniels have a vehicle and are willing to transport defendant as necessary.  They own two firearms that they'd prefer to keep stored in the home but represented they would store them at a family member's house if that was required by the conditions of defendant's release.  Mr. Daniels is willing to act as a third-party custodian,

---

[22] ECF No. 80 at 4.

[23] *Id.* at 5.

[24] *See United States v. Roderick Sanders*, No. 19-20037-01-DDC, 2020 WL 1528621, at *4 (D. Kan. Mar. 31, 2020) (general and speculative fears of COVID-19 insufficient to support request for temporary release).

though he does not want to act as a co-signor on a financial bond.  These conditions weigh in defendant's favor.

On the other hand, Mr. Daniels reports he is physically disabled and unemployed. Mrs. Daniels is a Certified Nursing Assistant at a nursing facility.  The nature of her job may increase the risk of exposure to COVID-19 both to defendant and potentially to those in the nursing facility where Mrs. Daniels works.  Although defendant argues she is at high risk while confined at CoreCivic, the court is not persuaded the home-confinement plan meaningfully mitigates the risk of COVID-19, given Mrs. Daniels's job.  Additionally, defendant's poor track record of complying with conditions of release causes the court to doubt the efficacy of additional conditions designed to isolate defendant from the public.

Risk to Others

Defendant proposes 14 days of 24-hour confinement, after which the exceptions to confinement include medical or drug treatments, court appearances, or other court-mandated requirements.  The court does not find defendant poses an especially high risk to others, although there is some risk associated with Mrs. Daniels's exposure at the nursing facility.  But, as noted, the court has made prior findings that defendant has a record of failing to appear at court proceedings and failing to comply with conditions of release.  This prior history, compounded with defendant's mental condition, leads the court to conclude it is unlikely she would be able to abide by in-home detention restrictions.[25]  This factor

---

[25] *Clark*, 2020 WL 1446895, at *14 ("A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who

also weighs against defendant's request for temporary release.  On balance, the court finds the four-factor analysis weighs against defendant's request for temporary release.

IT IS THEREFORE ORDERED that defendant's motion for immediate release (ECF No. 77) is denied.

Dated June 5, 2020, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

_____

come into contact with the defendant for supervision, and others if that individual is taken back into custody."); *see also United States v. Roderick*, 2020 WL 1528621 at *5 (location monitoring would pose a risk to pretrial services personnel given current recommendations regarding social distancing).